**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KEVIN CORBIN, | : | |
| | : | Civil Action No. 13-2142 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN J.T. SHARTLE, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

Petitioner <u>pro se</u>
Kevin Corbin
F.C.I. Fairton
P.O. Box 420
Fairton, NJ  08320

**KUGLER**, District Judge

    Petitioner Kevin Corbin, a prisoner currently confined at the Federal Correctional Institution at Fairton, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of a prison disciplinary proceeding and an application to proceed <u>in forma pauperis</u>

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
    (a) Writs of habeas corpus may be granted by
    the ... district courts ... within their
    respective jurisdictions ...
    (c) The writ of habeas corpus shall not
    extend to a prisoner unless- ... (3) He is in
    custody in violation of the Constitution or
    laws or treaties of the United States ... .

pursuant to 28 U.S.c. § 1915(a).  The sole respondent is Warden J.T. Shartle.

Based on his affidavit of indigence, the Court will grant Petitioner's application to proceed in forma pauperis.  For the reasons set forth below, the Petition will be dismissed without prejudice for failure to exhaust administrative remedies.

## I.  BACKGROUND

Petitioner Kevin Corbin is a federal prisoner confined at the Federal Correctional Institution at Fairton, New Jersey, where he is serving a 60-month sentence for conspiracy to distribute more than 100 kilos of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  See United States v. Corbin, Criminal No. 09-0212 (E.D. Ark.).  According to the U.S. Bureau of Prisons Inmate Locator, Petitioner's anticipated release date is December 24, 2013.

Petitioner alleges that on March 3, 2013, Correctional Officer Vanderlman conducted a search of the 8-man cell in which Petitioner was then housed with six other inmates, where he found a metal object sharpened to a point, with a handle and lanyard, a "shank," in a metal hatch above the toilet in the cell.  All seven inmates housed in the cell were issued identical disciplinary reports, in which each was charged with a Code 108 violation, "Possession of a Hazardous Tool."

Petitioner alleges that on or about March 9, 2013, Mr. Ebinger came to his cell and conducted a Unit Disciplinary Committee hearing, advising Petitioner that he was recommending that the matter be referred to the Disciplinary Hearing Officer ("DHO") for final disposition.  Petitioner alleges that he requested that two inmates be called as witnesses and that he be provided with a copy of the search log to verify that the cell had been searched the day before the charged incident.

Petitioner alleges that he appeared before the DHO on March 14, 2013.  He asserts that neither requested witness was brought to the hearing to testify and that he was not provided with the documents he had requested.  Petitioner asserts that he denied any knowledge of the weapon found in the search and that he had no tools to secret the weapon in the hatch where it had been found.  Petitioner asserts that the DHO found him guilty of the charged infraction, and imposed a loss of 40 days Good Conduct Time, as well as extending his possible pre-release transfer to a Community Corrections Center for the same 40-day period.

Petitioner asserts that, as of March 29, 2013, he has not received a written report of the DHO's findings and disposition.  Nevertheless, he asserts that he filed an appeal to the Northeast Regional Office, on an unspecified date.  Petitioner asserts that, as of March 29, 2013, he has not received a response to his administrative appeal.

On or about April 1, 2013, Petitioner filed this § 2241 Petition challenging the results of the disciplinary hearing. Petitioner asserts the following grounds for relief:  (1) that he was deprived of substantive and procedural due process in connection with the disciplinary proceeding, in that (a) the advance written notice was confusing because the officer who conducted the search was not the officer who wrote the incident report, (b) Petitioner was denied his right to call witnesses and obtain documentary evidence, (c) the decision was not supported by adequate evidence, because many prisoners had access to the cell and Petitioner did not have the tools necessary to remove the bolted metal cover from the hatch where the shank was found, (d) he has not received a timely written decision, (e) the sanctions are disproportionate to the offense, (f) the decision to find all seven inhabitants of the cell guilty of the infraction was arbitrary and capricious, (Memorandum of Law [1] at 3-); (2) that Code 108 is void for vagueness; and (3) that he was denied due process when Respondent failed timely to review him for pre-release transfer to a Community Corrections Center in violation of the Second Chance Act, Pub. L. No. 110-199, 18 U.S.?C. § 3624(c) (as amended, effective Apr. 9, 2008).  This last allegation appears unrelated to the disciplinary proceeding.

Petitioner seeks a declaration that the Code 108 violation is void for vagueness and asks this Court to reinstate his 40

days lost Good Conduct Time and to reinstate his pre-release transfer date back to May 2013.

## II.   LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

A court presented with a petition for writ of habeas corpus "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or

person confined is not entitled thereto." 28 U.S.C. § 2243. Thus, "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland, 512 U.S. at 856; see also Lonchar v. Thomas, 517 U.S. 314, 320 (1996); United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025.

### III.   ANALYSIS

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971). Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460,

466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[2] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).  In addition, to comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24

---

[2] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

7

hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[3] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 564-66. Due process also requires that findings of a prison disciplinary official, which result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[4] Finally, the "harmless error" rule applies to federal court review of prison disciplinary actions. See Elkin v. Fauver, 969 F.2d 48 (3d Cir.), cert. denied, 506 U.S. 977 (1992);

---

[3] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing. To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. See Ponte v. Real, 471 U.S. 491 (1985). "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals. ... [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

[4] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.1 et seq. See, e.g., 28 C.F.R. § 541.5 (Discipline Process); 28 C.F.R. § 541.7 (Unit Discipline Committee (UDC) review of the incident report); 28 C.F.R. § 541.8 (Discipline Hearing Officer (DHO) hearing).

Powell v. Coughlin, 953 F.2d 744 (2d Cir. 1991); Pressley v. Blaine, 544 F.Supp.2d 446, 457 (W.D. Pa. 2008).

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, including challenges to disciplinary proceedings, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Stanko v. Obama, 422 Fed.Appx. 146, 148 (3d Cir. April 7, 2011). The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if

9

the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."[5]  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the

---

[5] "This rule does not require the inmate to file under the Administrative Remedy Program before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), Inmate Accident Compensation claims(28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D),[ or other statutorily-mandated administrative procedures]." 67 F.R. 50804-01, 2002 WL 1789480 (August 6, 2002).

Regional Director signed the response.[6] Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

Disciplinary Hearing Officer (DHO) appeals are submitted directly to the Regional Director within 20 days.  See 28 C.F.R. §§ 542.14(d)(2), 542.15.  Therefore, DHO appeals involve fewer levels of review in order to be considered "exhausted."

Here, Petitioner filed this Petition less than three weeks after the challenged disciplinary hearing, admitting that he has not exhausted his administrative remedies.  He asserts that "Because Corbin is eligible for transfer to the RRC/CCC in May 2013, the futility doctrine applies in this action, as any exhaustion would result in permanent injury of not being transferred in time."  (Memorandum of Law at 2, ¶ 6.)  This Court is not persuaded.

The challenges to Petitioner's disciplinary hearing are of precisely the type that would benefit from administrative review which would permit development of a full factual record and application of the Bureau of Prisons' considerable expertise in prison discipline matters, all of which would benefit later

---

[6] Response times for each level of review are set forth in 28 C.F.R. § 542.18.

11

judicial review.  The injury of which Petitioner complains, delay in transfer to pre-release placement in a Community Corrections Center, is not so egregious as to justify excusing the exhaustion requirement.  Certainly, there is time to exhaust Petitioner's administrative remedies with respect to his loss of 40 days Good Conduct Time and actual release date, presently projected to be December 24, 2013.  Moreover, Petitioner's assertion of futility pre-supposes that he will not be successful with respect to the administrative review, a leap this Court is not prepared to make.  Finally, Petitioner makes no attempt to explain his failure to exhaust administrative remedies with respect to his challenge to the alleged delay in the initial review for pre-release placement.  Nor does he assert any facts that would permit this Court to determine that he suffered any actionable injury as a result of the alleged delay.

For all the foregoing reasons, the Petition will be dismissed without prejudice for failure to exhaust administrative remedies.  See, e.g., Gehl v. Zickefoose, Civil No. 10-4804, 2012 WL 4120481, *3-*4 (Sept. 18, 2012).

### IV. CONCLUSION

For the reasons set forth above, the Petition will be dismissed without prejudice.  An appropriate order follows.

S/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: April 11, 2013